# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN CLEARY and RITA BURKE, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 09 C 1596 |
| PHILIP MORRIS USA, INC., *et al.*, | ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY,  District Judge:

Brian Cleary and Rita Burke, representing a putative class, have sued several tobacco companies and tobacco-related entities.  They filed the case in state court in 1998.  Defendant Lorillard Tobacco Co. removed it to this Court after plaintiffs filed a third amended complaint on March 3, 2009.

In their third amended complaint, plaintiffs made several claims against the defendants on behalf of a putative class of Illinois residents.  Among other claims, plaintiffs alleged that defendants deceptively marketed "low tar," "light," and "ultra light" cigarettes as being safer than regular cigarettes, although they were equally dangerous.

Defendants moved for judgment on the pleadings with respect to plaintiffs' light cigarette claims on the ground that they are time-barred.  On September 8, 2009, the Court granted the motion as to the defendants other than Philip Morris and as to all of

Philip Morris' light cigarette brands other than Marlboro Lights. The Court deferred ruling as to that particular brand. For the following reasons, the Court now denies the motion for judgment on the pleadings on Count 3 of the third amended complaint insofar as it relates to Marlboro Lights and vacates the order previously entered by the state court in this case dismissing that particular claim.

**Background**

Plaintiffs first asserted light cigarettes claims in their first amended complaint, which they filed in state court on January 19, 2000. In that complaint, plaintiffs requested certification of a separate class of plaintiffs – Illinois residents who purchased and smoked Marlboro Lights, a brand of cigarettes manufactured and sold by Philip Morris. Plaintiffs alleged that Philip Morris marketed Marlboro Lights cigarettes as safer than regular cigarettes even though they were just as dangerous. They sought recovery under the Illinois Consumer Fraud Act (ICFA) and based on a theory of unjust enrichment.

In November 2001, plaintiffs withdrew their Marlboro Lights claims. In a memorandum they filed in state court, plaintiffs said that those claims "are no longer before the Court . . . . Another circuit court certified the class on February 1, 2001. *Miles v. Philip Morris, Inc.*, No. 00-L-0112 (Ill. Cir. Ct. Madison Cty.)." Pls.' Factual Mem. (filed Nov. 26, 2001). In essence, the plaintiffs advised the state court that because of the other pending class action, they were no longer proceeding in this case with their Marlboro Lights claims against Philip Morris.

Philip Morris moved to strike portions of plaintiffs' first amended complaint that referred to the Marlboro Lights claims. In response, plaintiffs did not oppose the striking

2

of the claims; they again said the claims were no longer before the Court "because another circuit court certified that class on February 1, 2001." Pls.' Mem. In Opp. To Def.'s Mot. to Strike ¶ 1. Plaintiffs opposed, however, the striking of certain factual allegations. The state court granted Philip Morris' motion to strike and dismissed plaintiffs' Marlboro Lights claims. The Court stayed the order, however, pending a ruling on plaintiffs' motion for leave to file a second amended complaint. Plaintiffs filed a second amended complaint on April 5, 2005. That complaint contained no light cigarettes claims.

In 2006, the Illinois Supreme Court dismissed the Madison County class action. *Price v. Philip Morris, Inc.*, 219 Ill. 2d 182, 273-74, 848 N.E.2d 1, 54-55 (2006). The court held that claims arising out of tobacco companies' concealment of the true nature of light cigarettes under the ICFA (the only claim before the court at the time) failed because the Act exempts from liability "conduct in compliance with orders" of a federal agency. *Id.* Concluding that the defendants were authorized by FTC practice and consent orders in their marketing of light cigarettes, the court ruled that plaintiffs' claims were barred. *Id.*

On December 15, 2008, the United States Supreme Court held that the Federal Labeling Act and the FTC's decisions regarding the advertising of low tar or light cigarettes do not preempt state-law claims against manufacturers of light cigarettes predicated on a duty not to deceive. *Altria Group, Inc. v. Good*, 129 S. Ct. 538 (2008). Plaintiffs contend the *Altria* decision represents a significant change in the law that would have changed the outcome in *Price*.

Shortly after the decision in *Altria*, plaintiffs moved the state court for leave to file a third amended complaint, a motion the state court granted. The new complaint reasserted one of the light cigarettes claims from the first amended complaint – the unjust enrichment claim – and expanded it to encompass other defendants in addition to Philip Morris and all low tar, light, and ultra light cigarette brands made and sold by Philip Morris, not just Marlboro Lights.

On March 13, 2009, Lorillard removed the case to this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1446(b). Lorillard's removal of the case was premised on the proposition that the inclusion of the light cigarettes claims amounted to the filing of a new action under CAFA. Otherwise, the case would not have been removable. Plaintiffs then moved to remand the case to state court. This Court concluded that the light cigarette claims against Lorillard did not relate back to the plaintiffs' first amended complaint because that complaint referenced only Marlboro Lights, a Philip Morris product. As a result, the third amended complaint was, in fact, a new action under CAFA. *See* Order of May 4, 2009. In a later ruling, the Court dismissed the light cigarettes claims against Lorillard as time-barred, based on the same relation-back determination. The Court declined, however, to remand the case, for reasons described in the ruling. *See* Order of July 1, 2009.

Defendants Philip Morris, R.J. Reynolds Tobacco Company, American Tobacco Company, Inc., Brown & Williamson Tobacco Corporation, and Liggett & Myers, Inc. then moved for judgment on the pleadings on Count 3 of the third amended complaint, arguing that the light cigarettes claims against them contained in that count were likewise time-barred. On September 8, 2009, the Court granted the motion with regard

4

to all defendants other than Philip Morris and with regard to all light brands made by Philip Morris other than Marlboro Lights.

The Court declined, however, to rule on the motion with regard to Philip Morris. The Court noted that the U.S. Supreme Court's decision in *Altria* "arguably amounts to a change of law that enables plaintiffs to proceed on an unjust enrichment claim" and that might render unjust the state court's 2002 order dismissing the plaintiffs' original unjust enrichment claim against Philip Morris concerning Marlboro Lights.  Though the claim would be time-barred if it were new, plaintiffs had originally asserted this claim within the period of limitations.  The Court directed Philip Morris to show cause why the Court should not vacate the state court's order dismissing the claim.

In response, Philip Morris has argued, among other things, that irrespective of the impact of *Altria*, the plaintiffs' light cigarettes claim in this case is precluded by the adverse judgment in *Price*, because the plaintiffs in this case were members of the class in that case.  Plaintiffs, in turn, seek reconsideration of the Court's ruling that their expanded light cigarettes claim against other Philip Morris brands does not relate back, for purposes of the statute of limitations, to the date on which they filed their initial light cigarettes claim that concerned only Marlboro Lights.

**Discussion**

**A.      Relation-back issue**

The Court deals first with plaintiffs' request that the Court reconsider its September 8, 2009 decision that claims based on Phillip Morris' marketing and sale of light cigarette brands other than Marlboro Lights do not relate back to the date plaintiffs

filed their first amended complaint.  In that decision, the Court concluded that

> there is nothing in the first amended complaint from which Philip Morris
> would have gotten notice of a potential claim relating to its low tar, light,
> and ultra light cigarette brands other than Marlboro Lights.  In fact, the first
> amended complaint pointedly named only Marlboro Lights, even though
> the other low tar, light, and ultra light brands had been in existence long
> before the filing of the first amended complaint.

Decision of Sept. 8, 2009 at 8.

In support of their request for reconsideration of this ruling, plaintiffs essentially elaborate upon their previous arguments for why their claims regarding other light cigarette brands should relate back.  In particular, they rely on language from the Illinois Supreme Court's decision in *Porter v. Decatur Memorial Hosp.*, 227 Ill. 2d 343, 882 N.E.2d 583 (2008).  In *Porter*, the court held that an amended complaint related back to the original complaint because it was "an amplification that grew out of the earlier allegation."  *Id.* at 362, 882 N.E.2d at 594.  Plaintiffs contend that their identification of additional light cigarettes brands manufactured and sold by Philip Morris is similarly an "amplification" that grew out of their earlier allegations concerning Marlboro Lights.

*Porter* used the "amplification" language to describe an earlier case, *Huntoon v. Pritchard*, in which a complaint alleging the defendant's conduct had caused "a certain sickness and malady" was amended to state that the defendant's conduct had caused "spinal injury which consisted of one or more crushed vertebrae."  *Porter*, 227 Ill. 2d at 362-63, 882 N.E.2d at 594 (citing *Huntoon v. Pritchard*, 371 Ill. 36, 39, 20 N.E.2d 53 (1939)).  *Porter* itself involved an amended complaint that added more specific allegations to a previous claim that defendants had failed to monitor plaintiff's diminishing neurological function after a car accident.  In both cases, the "amplification"

6

involved specific, detailed allegations of additional things that occurred in the course of

an incident described in more general terms in an earlier version of the plaintiff's

complaint. *Id*. at 363, 882 N.E.2d at 594. That, indeed, is the common meaning of

"amplification."

In this case, by contrast, plaintiffs did not simply add more specificity or detail to

their original Marlboro Lights-based claim. Rather, they added allegations involving

entirely different light cigarette brands. Those brands existed at the time plaintiffs filed

their first amended complaint. There is nothing to indicate that the plaintiffs were

unaware of or unable to plead specific allegations about Philip Morris' allegedly

deceptive practices with regard to these brands at the same time as they made their

claims about Marlboro Lights. Yet for whatever reason, they chose not to make

allegations about any brand other than Marlboro Lights. Their first amended complaint

did not even hint that their claim extended to anything other than that particular brand.

For this reason, the new allegations are not an "amplification" of the earlier claim

within the meaning of *Porter*. The Court reaffirms its earlier decision that claims against

Philip Morris brands other than Marlboro Lights do not relate back to the first amended

complaint and are therefore time-barred.

**B.      The interplay between claim preclusion and vacating the earlier dismissal**

As the Court has indicated, Philip Morris has moved for judgment on the

pleadings on plaintiffs' unjust enrichment claim concerning Marlboro Lights, the only

remaining part of Count 3 of the current version of the complaint. On a motion for

judgment on the pleadings, the Court "accept[s] the allegations in the complaint as true

and draw[s] all reasonable inferences in favor of [the nonmoving party]." *Iowa Physicians' Clinic Med. Found. v. Physicians Ins. Co. of Wisc.*, 547 F.3d 810, 811 (7th Cir. 2008).

Philip Morris' initial contention was that the claim is time-barred because the third amended complaint was filed after the five-year statute of limitations had run. The Court agreed with Philip Morris that the statute of limitations was not tolled following the dismissal of the original unjust enrichment claim. The Court indicated, however, that it might be appropriate to vacate the original dismissal of the claim. If so, the earlier version of the unjust enrichment claim, which was timely filed, would be reinstated.

Philip Morris now argues that the claim is precluded on the merits by the judgment in the *Price* case. Plaintiffs contend that the claim preclusion issue is not properly before the Court. The Court disagrees. First of all, the issue forms a proper basis for an argument by Philip Morris that the Court should not vacate the earlier dismissal of the Marlboro Lights-based claim. Second, though claim preclusion is an affirmative defense, it sometimes can be determined based on the pleadings. *See, e.g., Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008). The "pleadings" in this situation properly include both earlier filings in this case when it was in state court and the decision in the *Price* case, which is a matter of public record of which the Court properly may take judicial notice. *See, e.g., Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

Philip Morris' claim preclusion argument is intertwined with the issue of whether the Court should vacate the 2002 order dismissing the unjust enrichment claim. That

order, as the Court has noted, was an interlocutory order. Under Illinois law, a court may modify or vacate an interlocutory order at any time before final judgment. *Hemphill v. Chicago Transit Auth.*, 357 Ill. App. 3d 705, 708, 829 N.E.2d 852, 855 (2005). The same is true under federal procedural law. *See Solis v. Consulting Fiduciaries, Inc.*, 557 F.3d 772, 780 (7th Cir. 2009) (district court has "broad discretion to revisit its interlocutory orders"). "A trial judge is not bound by a prior order of another judge [and has] the right to review the prior order if in his judgment it was erroneous and he had the duty to do so if changed facts or circumstances make the prior order injust [sic]." *Richichi v. City of Chicago*, 49 Ill. App. 2d 320, 325, 199 N.E.2d 652, 655-56 (1964).

Plaintiffs cite two sets of "changed circumstances" that they argue justify vacating the 2002 order: the decision by the class representatives in *Price* to voluntarily dismiss their parallel unjust enrichment claim, and the Supreme Court's 2008 decision in *Altria*, which they contend constitutes a subsequent change in the law that undermines the Illinois Supreme Court's decision in *Price*. Because Philip Morris argues that the same *Price* decision, which went against the plaintiff class on the merits, bars pursuit of an unjust enrichment claim in the present case, the changed circumstances issue and the claim preclusion issue are intertwined.

**C.     Analysis of the issues of claim preclusion and vacating the 2002 dismissal**

*1.     The requirements for claim preclusion*

Philip Morris argues that there is no reason to vacate the earlier dismissal order because the plaintiffs' claim regarding Marlboro Lights is precluded by the Illinois Supreme Court's decision in *Price*. A final judgment on the merits of an action

precludes the parties to that action and their privies from litigating claims that were or could have been raised in that action. *Allen v. McCurry*, 449 U.S. 90, 93 (1980); *see also Anderson v. Chrysler Corp.*, 99 F.3d 846, 852 (7th Cir. 1996). A state court judgment has the same preclusive effect in federal court that it would have in a court of the state in which it was rendered. 28 U.S.C. § 1738; *Allen*, 449 U.S. at 96.

In Illinois, "a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action." *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 334, 665 N.E.2d 1199, 1204 (1996). Three requirements must be satisfied for claim preclusion to apply: a final judgment on the merits rendered by a court of competent jurisdiction; identity of the parties or their privies; and identity of the causes of action. *Downing v. Chicago Transit Auth.*, 162 Ill. 2d 70, 73-74, 642 N.E.2d 456, 458 (1994). If these requirements are met, the judgment in the earlier suit bars "not only those matters which were actually litigated and resolved in the prior suit, but also any matter which might have been raised in that suit to defeat or sustain the claim or demand." *Rein*, 172 Ill. 2d at 336, 665 N.E.2d at 1205.

Plaintiffs do not dispute that the Illinois Supreme Court's decision in *Price* represents a final judgment on the merits. Nor do plaintiffs dispute that there is identity of the parties in the two suits, in that they were members of the plaintiff class in *Price*. Plaintiffs contend, however, that there is no identity of the causes of action because class members in this case raise a different claim from the one that was decided in *Price* and seek a different remedy.

Illinois law applies the "transactional test" to determine whether there is an

identity to the cause of action at issue.  Under this test, "separate claims will be considered the same cause of action . . . if they arise from a single group of operative facts, regardless of whether they assert different theories of relief."  *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 311, 703 N.E.2d 883, 893 (1998).

The light cigarettes claim in plaintiffs' third amended complaint is premised upon an unjust enrichment theory.  A plaintiff may recover under a theory of unjust enrichment if the defendant unjustly retains a benefit to plaintiff's detriment, and defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.  *E.g., HPI Health Care Servs., Inc., v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 160, 545 N.E.2d 672 (1989).  Plaintiffs allege that Philip Morris promoted the sale of its light cigarettes by encouraging smokers to believe they were healthier than regular cigarettes, when they are in fact just as dangerous.  Plaintiffs contend that Philip Morris was unjustly enriched as a result of these claims about light cigarettes and that allowing Philip Morris to keep the money it made selling light cigarettes would violate principles of justice, equity, and good conscience.

The unjust enrichment claim arises from the same group of operative facts as the claim in *Price* – namely, actions allegedly taken by Philip Morris to deceive the public about the true nature of light cigarettes.  The *Price* plaintiffs claimed that Philip Morris engaged in deceptive advertising by suggesting that light cigarettes were healthier than regular cigarettes; they alleged that this deception violated the ICFA. The allegations the *Price* plaintiffs offered in support of their fraud theory are essentially those the plaintiffs in the present case offer to support their unjust enrichment theory. In fact, the plaintiff class in *Price* originally raised the same sort of unjust enrichment

11

claim presented in this case.  The fact that the *Price* class representatives elected not

to pursue this claim at trial does not alter the fact that there is identity of the cause of

action between the two cases.  In sum, initial analysis indicates that the judgment in

*Price* precludes the current claim.

2.     *The voluntary dismissal of the unjust enrichment claim in* Price

Claim preclusion also applies in the class action context.  "A judgment in a

properly entertained class action is binding on class members in any subsequent

litigation . . . .  A judgment in favor of the defendant extinguishes the claim, barring a

subsequent action on that claim."  *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S.

867, 874 (1984).  Class members who were not the active representatives in a prior

class action are bound by the judgment, so long as they were adequately represented

by the class representatives.  *Hansberry v. Lee*, 311 U.S. 32, 43 (1940).

At the time the Marlboro Lights claims against Philip Morris were dismissed in the

present case, *Price*, the Madison County class action, included a light cigarettes claim

based on a theory of unjust enrichment.  On the first day of trial, however, the

*Price* class representatives dismissed the claim without prejudice.  No notice of the

dismissal was given to the absent class members.

Plaintiffs argue that the voluntary dismissal reflects inadequate representation by

the class representatives of the interests of the members of the class in this case.

Under Illinois law, notice to class members is not required for every action taken in the

course of class action litigation.  The Illinois Code of Civil Procedure gives a judge

discretion to order "such notice that it deems necessary to protect the interests of the

class and the parties."  735 ILCS 5/2-803.  A class action plaintiff must obtain court

approval to dismiss a class action, but even then notice to class members is discretionary:  a class action may dismissed "upon notice as the court may direct."  *Id*. 2-806.  There is no indication that class counsel in *Price* or the defendants in that case asked the court presiding over the case to direct notice to the class regarding the dismissal of the unjust enrichment claim, nor did the court do so on its own.

A failure to pursue every potential theory of relief does not render a class representative inadequate.  *See In re Mexico Money Transfer Litig.*, 267 F.3d 743, 747 (7th Cir. 2001).  Class counsel must make "considered judgment[s]" about how best to proceed with litigation; such tactical decisions do not render their representation inadequate even if later plaintiffs believe the earlier decisions were wrong.  *Cf. B.H. v. McDonald*, 49 F.3d 294, 297 (7th Cir. 1995) (class counsel's tactical decision not to hold in-court hearings did not render their representation inadequate).  The class representatives' decision not to pursue the unjust enrichment claim does not by itself mean that their representation of the current plaintiffs was inadequate.

That said, the unjust enrichment claim was never adjudicated on its merits. Rather, it was voluntarily dismissed without prejudice, and that dismissal merged into the later adverse judgment on the merits of the *Price* class' ICFA claim.  *See, e.g., United States v. Temple*, 299 F.2d 30 (7th Cir. 1962); *Koffski v. Vill. of N. Barrington*, 241 Ill. App. 3d 479, 485-86, 609 N.E.2d 364, 369 (1993).

The Court also notes that due to the lack of notice to the *Price* class and the last-minute nature of the dismissal, class members did not have the opportunity to comment on the dismissal or to opt out of the *Price* class once the class representatives elected not to pursue the unjust enrichment theory.  Whether or not this is enough to render the

representation inadequate in a way that, by itself, defeats Philip Morris' claim preclusion argument, the absence of notice is a factor appropriately taken into account.

> 3.  *The effect of* Altria

Even if the three elements of claim preclusion are met, a later case may not be precluded under Illinois law if an intervening change in law between the first and second cases creates a materially altered situation. *See Statler v. Catalano*, 293 Ill. App. 3d 483, 487, 691 N.E.2d 384, 387 (1997) ("*Res judicata* does not operate as an automatic bar where between the time of the first and the second there has been an intervening decision or a change in the law creating an altered situation."); *see also, C.O. Baptista Films v. Cummins*, 9 Ill. 2d 259, 265, 137 N.E.2d 393, 397 (1956) ("a definitive interpretation [of a statute] which was directly opposed to the [earlier] decision . . . [makes the earlier] erroneous construction of a statute . . . not binding upon the courts."); *State Farm Mut. Auto. Ins. Co. v. Duel*, 324 U.S. 154, 162 (1945) ("it is . . . the general rule that res judicata is no defense where between the time of the first judgment and the second there has been an intervening decision or a change in the law creating an altered situation.").

Plaintiffs argue that the Supreme Court's decision in *Altria* creates just such an altered situation. To assess this argument, the Court first considers the basis for the decision in *Price*.

As noted earlier, in *Price* the Illinois Supreme Court determined that the ICFA claim in that case was barred on the ground that the FTC's actions constituted authorization of the tobacco companies' marketing practices. The court concluded that "the FTC could, and did, specifically authorize all United States tobacco companies to

14

utilize the words "low," "lower," reduced" or like qualifying terms, such as "light," so long

as the descriptive terms [were] accompanied by a clear and conspicuous disclosure of

the "tar" and nicotine content in milligrams of the smoke produced by the advertised

cigarette. *Id.* at 265, 848 N.E.2d at 50. In reaching this conclusion, the court

specifically relied on a consent order issued by the FTC, *In re American Brands, Inc.*,

79 F.T.C. 255 (1971), which the court characterized as "specifically authoriz[ing] all

United States tobacco companies to use the words 'low, 'lower,' 'reduced' or like

qualifying terms, such as 'light,'" under certain conditions. *See Price*, 219 Ill. 2d at 265-

66, 848 N.E.2d at 50.

The plaintiffs in *Altria* were Maine residents who smoked Marlboro Lights and

Cambridge Lights. They alleged that Philip Morris (and its parent company Altria

Group) deliberately deceived consumers about "the true and harmful nature of 'light'

cigarettes" in violation of a Maine statute that, like the ICFA, prohibits "unfair methods of

competition and unfair or deceptive acts or practices in the conduct of any trade or

commerce." *Altria,* 129 S. Ct. at 541. Altria argued that the plaintiffs' claims were

impliedly preempted by FTC policy.[1] It argued that the FTC had "*required* tobacco

companies to disclose tar and nicotine yields in cigarette advertising using a

government-mandated testing methodology and [had] *authorized* them to use

descriptors as shorthand references to those numerical test results." *Id*. at 550

(emphasis in original). The Supreme Court squarely rejected this argument, finding that

---

[1] Altria also argued that the plaintiffs' claims were expressed preempted by the Federal Labeling Act, 15 U.S.C. § 1333(a), but the Court rejected the argument. *Altria*, 129 S. Ct. at 541.

"the FTC has in fact never required that cigarette manufacturers disclose tar and

nicotine yields, nor has it condoned representation of those yields through the use of

"light" or "low tar" descriptors." *Id.* And the Court specifically addressed and rejected

the argument about the FTC's *American Brands* consent order that the Illinois Supreme

Court had accepted in *Price.* The Court stated that the consent order authorized

nothing; it "only enjoined conduct," and in any event it was binding only on the parties to

the consent order. *Id.* at 550 n. 13.[2] In short, the Supreme Court's decision in *Altria*

reads the FTC's actions in a way that directly contradicts the interpretation on which the

Illinois Supreme Court relied in *Price* to conclude that the agency had approved the use

of "light" or similar terms.

Philip Morris argues that *Altria* does not directly contradict *Price* because the

Maine consumer fraud act at issue in *Altria* is worded differently from the ICFA. The

ICFA's prohibitions do not apply to actions "specifically authorized by laws administered

by any regulatory body or officer acting under statutory authority of this State or the

United States." 815 ILCS 505/10b(1). The Maine consumer fraud statute contains no

such exception. Thus, Philip Morris argues, the *Altria* defendants needed to prove that

the FTC had acted so broadly as to create a *de facto* policy that preempted state

action, whereas the defendants in *Price* needed to show only that the specific actions

they undertook were authorized by the FTC. But as this Court has indicated, the

Supreme Court made it clear that the FTC had authorized nothing of the kind. The

---

[2] The Court also concluded in *Altria* that "the FTC's failure to require petitioners to correct their allegedly misleading use of 'light' descriptors is not evidence to the contrary; agency nonenforcement of a federal statute is not the same as a policy of approval." *Id.* at 550.

Supreme Court's reasoning in *Altria* makes the distinction suggested by Philip Morris inconsequential.

4.    *Conclusion*

The decision in *Altria*, together with the other circumstances the Court has described, persuades the Court that this case presents a materially altered situation such that the plaintiffs' unjust enrichment claim is not barred by Illinois claim preclusion law.  The other circumstances include the fact that the unjust enrichment claim was not adjudicated on the merits, combined with the fact that the *Price* class representatives dismissed it without notice to the class, in a way that calls the adequacy of their representation into question.

The Court concludes, based on these same considerations, that there are changed circumstances that render unjust the state court's 2002 interlocutory order dismissing the plaintiffs' unjust enrichment claim concerning Marlboro Lights claim.  The Court therefore vacates that order and reinstates the claim.

**Conclusion**

For the foregoing reasons, the Court denies defendants' motion for judgment on the pleadings concerning Count 3 of the third amended complaint [docket no. 85] insofar as that claim concerns Philip Morris' Marlboro Lights brand.  The 2002 order dismissing the unjust enrichment claim regarding light cigarettes from the first amended complaint is vacated, and that claim is reinstated.  Philip Morris is directed to answer the claim on or before January 27, 2010.  The Court denies plaintiffs' request to

17

reconsider its earlier ruling limiting plaintiffs' claims to Marlboro Lights [docket no. 131].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: January 13, 2010